**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

MICHAEL CANDIO,                                           Case No.

                      Plaintiff,              **COMPLAINT**

      -against-

                                   **Jury Trial Demanded**

UG ENTERPRISES, INC. d/b/a UNCLE
GIUSEPPE'S MARKETPLACE, UNCLE
GIUSEPPE'S MELVILLE, INC., and ROBERT
BACCELLO,

                     Defendants.
-------------------------------------------------------------X

Plaintiff Michael Candio ("Candio" or "Plaintiff") alleges against Defendants UG

Enterprises, Inc. d/b/a Uncle Giuseppe's Marketplace ("UG Enterprises") and Uncle Giuseppe's

Melville, Inc. ("UG Melville") (UG Enterprises and UG Melville, collectively, "Uncle

Giuseppe's") and Robert Baccello ("Baccello") (Uncle Giuseppe's and Baccello, collectively,

"Defendants") upon information and belief, as follows:

<u>**NATURE OF THE CLAIMS**</u>

1.     Candio complains pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000(e), *et seq.*, ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290,

*et seq.*, ("NYSHRL"), and the New York City Human Rights Law, N.Y. Admin. Code § 8-101, *et*

*seq.*, ("NYCHRL"), seeking damages to redress the lost wages, emotional distress, and other harms

he suffered and continues to suffer as a result of being discriminated against and denied a

reasonable accommodation by his former employer on the basis of his **religion** and retaliated

against by his former employer for requesting a reasonable accommodation.

2.     The Federal, and New York State anti-discrimination and anti-retaliation laws are

intended to afford all employees the same rights, regardless of their religion, and provide them

with the dignity and respect they deserve in the workplace.  As such, this is an action for declaratory and monetary relief to redress Defendants' unlawful employment practices, including the unlawful discrimination, failure to accommodate, and retaliation committed against Plaintiff.

## JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).  This Court has supplemental jurisdiction over Plaintiff's claims under city and state law pursuant to 28 U.S.C. § 1367(a), in that the city, state, and federal claims arise from a common nucleus of operative fact such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

5.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## EXHAUSTION OF REMEDIES

6.      On or about December 21, 2023, Plaintiff duly filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned Charge Number 520-2024-01821.

7.      On or about May 9, 2024, the EEOC terminated its processing of the Charge of Discrimination—making no determination on the merits of the Charge—and issued Plaintiff a Notice of Right to Sue.

8.      Plaintiff has exhausted his administrative remedies and files this Complaint within 90 days of the EEOC's issuance of his Notice of Right to Sue, satisfying all procedural prerequisites for bringing this action.

## PARTIES

**Plaintiff Michael Candio**

9.      At all times relevant to this action, Candio was and is a resident of Suffolk County, New York.

10.      Candio is a Christian and a lifelong practitioner of the Catholic faith.

11.      Candio was employed by Uncle Giuseppe's between approximately February 10, 2020, and April 13, 2023.

12.      For the duration of his employment with Uncle Giuseppe's, Candio reported to the Uncle Giuseppe's store located at 890 Walt Whitman Road, Melville, New York 11747 (the "Melville Market").

13.      Beginning in or around September 2022 and continuing for the remainder of Candio's employment with Uncle Giuseppe's, Candio worked under the supervision of, and was in a subordinate position to, Baccello.

14.      For the duration of his employment with Uncle Giuseppe's, Candio was an employee of Uncle Giuseppe's within the meaning of all applicable statutes.

**Defendant UG Enterprises, Inc. d/b/a Uncle Giuseppe's Marketplace**

15.      At all times relevant to this action, UG Enterprises was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

16.      At all times relevant to this action, UG Enterprises was and is a domestic for-profit entity authorized to operate in the State of New York.

17.     During Candio's employment with Uncle Giuseppe's, UG Enterprises maintained corporate offices located at 475 Main Street, Farmingdale, New York 11735.

18.     During Candio's employment with Uncle Giuseppe's, UG Enterprises maintained its headquarters at the premises designated and/or more commonly known as 225 Old Country Road, N Building Suite 2, Melville, New York 11747.

19.     At all times relevant to this action, UG Enterprises was and is an Italian specialty food market, offering, among other items, fresh and prepackaged food and groceries for sale to the public for in-store purchase, pick-up, or delivery, as well as catering services.

20.     For the duration of Candio's employment with Uncle Giuseppe's, UG Enterprises operated the Melville Market store location at 890 Walt Whitman Road, Melville, New York 11747, at which Candio worked during his employment with Uncle Giuseppe's.

21.     At all times relevant to this action, UG Enterprises and UG Melville jointly operated the Melville Market at which Candio worked during his employment with Uncle Giuseppe's.

22.     During Candio's employment with Uncle Giuseppe's, UG Enterprises issued Candio his 2022 W-2 Form, which identifies the employer name, address, and zip code as:

> UG Enterprises Inc
> Uncle Giuseppes Marketplace
> 475 Main St
> Farmingdale NY 11735-3570

23.     UG Enterprises is registered with the United States Department of Transportation ("USDOT") as an "Active" status carrier assigned USDOT Number 2298632, with the following listing the following entity information:

| COMPANY INFORMATION[1] | |
|---|---|
| **Legal Name:** | **UG ENTERPRISES INC** |
| **DBA Name:** | **UNCLE GIUSEPPES MARKETPLACE** |
| **Physical Address:** | **225 OLD COUNTRY ROAD N BLDG STE 2 MELVILLE, NY   11747** |
| **Phone:** | **(516) 420-0126** |
| **Mailing Address:** | **225 OLD COUNTRY ROAD N BLDG STE 2 MELVILLE, NY   11747** |

24.     For the duration of Candio's employment with UG Enterprises, UG Enterprises employed fifteen (15) or more employees.

25.     At all times relevant to this action, UG Enterprises was an employer of Candio within the meaning of all applicable statutes.

**Defendant Uncle Giuseppe's Melville, Inc.**

26.     At all times relevant to this action, UG Melville was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

27.     At all times relevant to this action, UG Melville was and is a domestic for-profit entity authorized to operate in the State of New York.

28.     During Candio's employment with Uncle Giuseppe's, UG Melville maintained its headquarters at the premises designated and/or more commonly known as 225 Old Country Road, N Building Suite 2, Melville, New York 11747.

---

[1] https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&query_string=2298632, retrieved July 11, 2024.

29.     At all times relevant to this action, UG Melville was and is an Italian specialty food market, offering, among other items, fresh and prepackaged food and groceries for sale to the public for in-store purchase, pick-up, or delivery, as well as catering services.

30.     For the duration of Candio's employment with Uncle Giuseppe's, UG Melville operated the Melville Market store location at 890 Walt Whitman Road, Melville, New York 11747, at which Candio worked during his employment with Uncle Giuseppe's.

31.     At all times relevant to this action, UG Melville and UG Enterprises jointly operated the Melville Market at which Candio worked during his employment with Uncle Giuseppe's.

32.     The New York State Department of State website identifies the following information for UG Melville:

**ENTITY NAME:**UNCLE GIUSEPPE'S MELVILLE, INC.[2]

Service of Process on the Secretary of State as Agent

The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:
Name:RICH EULO
Address:225 OLD COUNTRY ROAD, SUITE 2, MELVILLE, NY, UNITED STATES, 11747

Principal Executive Office Address

**Address:**225 OLD COUNTRY ROAD, SUITE 2, MELVILLE, NY, UNITED STATES, 11747

33.     The New York State Liquor Authority Mapping Project website returns the following information for a liquor license search by location of the Melville Market address:

---

[2] https://apps.dos.ny.gov/publicInquiry/EntityDisplay, retrieved July 11, 2024.

**UNCLE GIUSEPPE'S MELVILLE INC | Active[3]**

Premises Details

| | |
|---|---|
| Premises Name | **UNCLE GIUSEPPE'S MELVILLE INC** |
| License ID | **0081-20-108882** |
| Legacy Serial No. | **1305088** |
| Category | **Off Premises Beer** |
| Description | **Grocery Store** |
| Address | **830-890 WALT WHITMAN RD STORE #5 MELVILLE, New York 11747 Suffolk County** |

34.    For the duration of Candio's employment with UG Melville, UG Melville employed fifteen (15) or more employees.

35.    At all times relevant to this action, UG Melville was an employer of Candio within the meaning of all applicable statutes.

**Defendant Robert Baccello**

36.    Upon information and belief, at all times relevant to this action, Baccello was and is a resident of the State of New York.

37.    Beginning in or around September 2022 and continuing at least for the remainder of Candio's employment with Uncle Giuseppe's, Baccello was employed by Uncle Giuseppe's as the Store Manager of the Melville Market.

38.    Beginning with Baccello's assumption of the Store Manager position at the Melville Market and continuing through Candio's termination from Uncle Giuseppe's, Baccello was in a position superior to Candio with respect to their employment at Uncle Giuseppe's.

---

[3] https://lamp.sla.ny.gov, retrieved July 11, 2024.

39.    Beginning with Baccello's assumption of the Store Manager position at the Melville Market, for the remainder of Candio's employment with Uncle Giuseppe's, Baccello possessed and exercised supervisory authority over Candio.

40.    In his capacity as the Melville Market Store Manager for Uncle Giuseppe's, the supervisory authority Baccello possessed and exercised over the terms and conditions of Candio's employment, vested in him by Uncle Giuseppe's, included, but was not limited to the authority to hire and fire Candio, discipline him, direct his work activities, assign him job responsibilities, monitor and evaluate his performance, set and modify his work schedule, grant and/or deny him accommodation requests, enforce Uncle Giuseppe's policies with respect to his employment, and otherwise control the terms and conditions of Candio's employment with Uncle Giuseppe's.

41.    At all times relevant to this action, Baccello was an employee of Uncle Giuseppe's within the meaning of all applicable statutes.

42.    At all times relevant to this action, Baccello, as Candio's supervisor, was an employer of Candio within the meaning of the NYSHRL.

**FACTUAL ALLEGATIONS**

43.    On or around February 10, 2020, Candio commenced employment with Uncle Giuseppe's.

44.    For the duration of his employment with Uncle Giuseppe's, Candio held the position of Deli Clerk.

45.    In his capacity as a Deli Clerk, Candio's duties and responsibilities included, but were not limited to slicing cold cuts, preparing sandwiches and other deli food items, preparing catering orders serving customers, cleaning the deli area, and ensuring the deli was sufficiently stocked and prepared for the following day.

46.    For the duration of his employment with Uncle Giuseppe's, Candio satisfactorily performed his duties and responsibilities.

47.    For the duration of his employment with Uncle Giuseppe's, Candio never received a write-up or discipline prior to his termination.

48.    For the duration of his employment with Uncle Giuseppe's, Candio was an extremely diligent employee.  Candio received a glowing performance review from and was considered for promotion by Robert Olsen ("Olsen"), the Melville Market Store Manager preceding Baccello.  Upon information and belief, Olsen was subsequently promoted to Operations Manager for Uncle Giuseppe's—a company-wide position.

49.    For the duration of his employment with Uncle Giuseppe's, Candio reported to work at the Melville Market store location.

50.    Throughout his employment with Uncle Giuseppe's, Candio was usually scheduled to work six days per week, with Wednesday off.  Candio's regularly scheduled hours were from 5:00 p.m. until approximately 11:00 p.m. on weekdays, and from 1:00 p.m. until approximately 11:00 p.m. on weekends.

51.    Throughout his life, Candio has been—and remains—a practicing Catholic. Candio received his education from private Catholic schools, regularly attends Mass, observes major holidays, and frequently consults with his priest regarding spiritual and moral issues.

52.    In accordance with his faith, Candio does not work on Easter Sunday and does not work later than noon on Christmas Eve—two of the holiest days in the Catholic faith—to attend church services and observe the holidays.

53.    From at least December 2020 until in or around September 2022, Candio was directly supervised by Jason Coppola ("Coppola"), Deli Manager at the Melville Market.

54.     During Coppola's supervision of Candio, Candio requested from Coppola a religious accommodation to not work on Easter Sunday and to have his shift end no later than noon on Christmas Eve.

55.     Candio explained to Coppola that the reason he needed to leave his shift early on Christmas Eve and to have Easter Sunday off to enable him to attend church services and to observe the holidays.

56.     Coppola granted Candio's requested accommodation.

57.     In 2020 and 2021, on Christmas Eve, Coppola permitted Candio to leave his shift no later than noon.

58.     In 2021 and 2022, Coppola permitted Candio to take off Easter Sunday.[4]

59.     To ensure Uncle Giuseppe's was not affected by Candio's need to leave his shift early on Christmas Eve, Candio worked well beyond his shift end on December 23 (assisting with catering preparation until approximately 2:00 a.m.) and began his shift early in the morning on Christmas Eve.

60.     Throughout Candio's employment with Uncle Giuseppe's, Uncle Giuseppe's employed approximately 20-25 Deli Clerks (or individuals with similar duties and responsibilities) who were scheduled to work at the Melville Market.

61.     Throughout Candio's employment with Uncle Giuseppe's, Uncle Giuseppe's regularly allowed Melville Market Deli Clerks to switch shifts or cover each other's shifts, even when the need to switch shifts or for coverage was not due to a religious obligation.

62.     Throughout Candio's employment with Uncle Giuseppe's, Uncle Giuseppe's, Candio frequently covered for other deli clerks who called out, often with little or no prior notice.

---

[4]The Melville Market was closed on Easter Sunday 2020 due to the Coronavirus pandemic and related restrictions.

63.     Under Coppola, Uncle Giuseppe's had no difficulty providing coverage for Candio's Easter Sunday shift or for the balance of his Christmas Eve shift.

64.     Under Coppola, neither Candio's off day for Easter Sunday nor his early departure on Christmas Eve caused any operational issues for Uncle Giuseppe's.

65.     In or around September 2022, Uncle Giuseppe's reassigned Coppola to another store and transferred in Vinny Ruggiero ("Ruggiero") to serve as the deli manager for the Melville Market.

66.     Upon his transfer, Ruggiero immediately became Candio's supervisor.

67.     As Christmas Eve of 2022 approached, Candio provided Ruggiero advance notice that he would need to leave his shift early on Christmas Eve, explaining he had done so the prior two years.

68.     Candio explained to Ruggiero that he needed to leave his shift early to go to church with his family.

69.     Candio's request to Ruggiero to leave his Christmas Eve shift early was a request for a religious accommodation.

70.     In response to Candio's request, Ruggiero said, **"You gotta be here, or its not gonna end good for you.  It's nothing personal."**  Candio was surprised by Ruggiero's response and told him, "Do what you have to do, but I will not be here."  Overhearing this conversation, Uncle Giuseppe's executive chef, Vincent Olivieri, approached Candio and said, "Am I to understand you don't work holidays?" to which Candio responded, **"I don't work on Christmas Eve, and it's always been a non-issue."**[5]

71.     On Christmas Eve of 2022, Candio did not work his regular shift.

---

[5] The comments in quotations asserted in this Complaint are accurate to Plaintiff's best recollection and, to the extent they are not exact, accurately convey Plaintiff's recollection of the essence of the communication.

72.     Uncle Giuseppe's suffered no operational difficulties as a result of Candio not working his regular shift, and Uncle Giuseppe's was able to cover his shift without hardship.

73.     During Ruggiero's supervision of Candio, Uncle Giuseppe's began utilizing the Paycom application to manage certain aspects of employment, including employee requests for time off.

74.     Upon Uncle Giuseppe's implementation of the Paycom application, instead of an employee asking his or her supervisor for an off day, the employee made requests for time off through the application.

75.     In or around the end of March 2023, through the Paycom application, Candio requested an off day on Sunday, April 9, 2023—Easter Sunday.

76.     In his request, Candio indicated that the reason he was requesting an off day on April 9, 2023, was for a "religious obligation".

77.     Candio's request for Easter Sunday off was a request for a religious accommodation.

78.     On or around April 5, 2023, Uncle Giuseppe's denied Candio's request for Easter Sunday off.

79.     Uncle Giuseppe's denial of Candio's requested accommodation stated that Candio had made a **"religious allegation"**.

80.     At all times between when Candio requested Easter Sunday off and April 9, 2023—Easter Sunday—Candio maintained sufficient accrued personal time off to cover his full Easter Sunday scheduled shift.

81.     Candio was stunned by Uncle Giuseppe's denial of his request for Easter Sunday off—a clearly stated request for a religious accommodation—given he had received the accommodation for each of the previous two years and had the accrued time available.

82.     The day Candio received notice that his accommodation request was denied, he called Ruggiero and asked why his request for Easter Sunday off was denied.

83.     Ruggiero responded, "It's a blackout date, you have to talk to Rob [Baccello] about that." Candio replied, "There's nothing to discuss.  I put in the request, I'm going to go to church and spend time with my family.  I've taken off for Easter every year."  Ruggiero told Candio, **"Worst case scenario, you get written up."**  Candio explained, "I'll take my medicine.  I'm just letting you know I will be calling out, so you can make whatever arrangements you need to make."

84.     After Candio's response, Ruggiero stopped communicating with him and gave him the cold shoulder.

85.     On April 9, 2023, Candio did not work his shift and attended Easter Sunday church services with his family.

86.     Upon information and belief, the Melville Market closes at 3:00 p.m. on Easter Sunday.

87.     As Candio's regular Sunday shift began at 1:00 p.m., even if he had worked his usual shift on Easter Sunday, he would have worked approximately two hours.

88.     Additionally, Easter Sunday—unlike other holidays—is not a busy day for the Melville Market's deli department.

89.     Upon information and belief, Uncle Giuseppe's employed multiple Deli Clerks (or other employees with similar duties and responsibilities) who were not scheduled to work Easter

Sunday and could have covered Candio's Easter Sunday shift at the Melville Market, including Glen [last name currently unknown] and Bob [last name currently unknown].

90.     Further, on occasion, Uncle Giuseppe's was unable to find coverage for a Deli Clerk who called out of his or her scheduled shift due to the last-minute nature of the call-out, and the Melville Market operated with one fewer Deli Clerk than scheduled.

91.     On those occasions, the remaining Deli Clerks were able to pick up the slack caused by the missing employee, and the Melville Market operated without undue hardship.

92.     As a result, even if Uncle Giuseppe's was unable to find coverage for Candio on Easter Sunday, the many other Deli Clerks scheduled to work on Easter Sunday were able to assume Candio's responsibilities and allow the Melville Market to operate without hardship.

93.     Upon information and belief, Uncle Giuseppe's did not experience any undue operational hardships as a result of Candio's refusing to work his Easter Sunday shift.

94.     On April 10 and 11, 2023, Candio worked his regular shifts at the Melville Market.

95.     Other than Ruggiero's refusal to communicate with him, Candio worked his shifts on April 10 and April 11, 2023, without issue.

96.     On April 12, 2023, a Wednesday, Candio had his regular day off.

97.     The next day, April 13, 2023, shortly before his shift, Baccello called Candio and asked him why he did not come to work the prior Sunday.

98.     The sum and substance of the conversation that followed was:

<u>CANDIO</u>: I called out.  It was the right thing to do.

<u>BACCELLO</u>: The right thing to do would have been to come to work.

<u>CANDIO</u>: It was Easter Sunday, I went to church.  I put in a request for the time off, it got denied, I have the time.

BACCELLO: **It was a blackout date.  It was a holiday, and it's not even registered as a state holiday.**

CANDIO: What does that have to do with anything?  I've never worked on Easter Sunday ever—at any job—even when I had my own business.

BACCELLO: **It always seems to be a problem with you with the holidays.**

CANDIO: The only other holiday I take off for is Christmas Eve, and I always worked something out with Jason [Coppola].

BACCELLO: **I'm trying to run a business here.  Well, I'm just gonna have to let you go.  You're done.**

99.     Candio was stunned and distraught by his termination.

100.    Candio asked Baccello about his accrued sick and vacation pay.  Baccello responded that someone from Uncle Giuseppe's' human resources department would reach out to him.

101.    No one from Uncle Giuseppe's' human resources department ever reached out to Candio.

102.    Candio was entitled to be paid for his accrued sick and vacation time.

103.    Uncle Giuseppe's never paid Candio for his accrued sick and vacation time.

104.    Candio's request for Easter Sunday off was a request for a reasonable accommodation for his sincerely held religious beliefs.

105.    Uncle Giuseppe's would not have suffered an unreasonable hardship by granting Candio's request for Easter Sunday off.

106.    Uncle Giuseppe's unreasonably denied Candio's request for a reasonable accommodation, requiring him to work on Easter Sunday.

107.    After and because Candio refused to work his shift on Easter Sunday due to the conflict with his religious beliefs, Uncle Giuseppe's disciplined him by terminating his employment.

108.    Uncle Giuseppe's discriminated against Candio by terminating his employment and failing to pay out his accrued sick and vacation pay due to Candio's religious beliefs.

109.    Uncle Giuseppe's retaliated against Candio by terminating his employment and failing to pay out his accrued sick and vacation pay after and because Candio sought an accommodation due to his religious beliefs.

110.    Baccello aided and abetted Uncle Giuseppe's failure to accommodate Candio by implementing a policy of designating "blackout" dates during which Candio was not permitted to take Easter Sunday off, thereby actually participating in the failure to accommodate.

111.    Baccello aided and abetted Uncle Giuseppe's discrimination of and retaliation of Candio by terminating Candio's employment, thereby actually participating in the discrimination and retaliation.

112.    Baccello further aided and abetted Uncle Giuseppe's discrimination of and retaliation of Candio by failing to ensure Candio was paid out for his accrued sick and vacation pay, thereby actually participating in the discrimination and retaliation.

113.    Defendants' actions and conduct were and are intentional and intended to harm Candio.

114.    Defendants have caused damage and injury to Candio by failing to accommodate and discriminating against Candio and then again by retaliating against him after and because he sought a religious accommodation.

115.    As a result of Defendants' unlawful failure to accommodate, discriminatory, and retaliatory conduct, Candio was humiliated, demeaned, and belittled, and Candio suffers and continues to suffer a loss of rights, emotional distress, loss of income, and earnings.

116.    As a result of Defendants' failure to accommodate and discriminatory and retaliatory treatment, Candio suffered and continues to suffer severe emotional distress.

117.    As a result of the acts and conduct complained of herein, Candio has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Candio has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

118.    As Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Defendants are liable to Candio for punitive damages.

## FIRST CAUSE OF ACTION
### Failure to Accommodate in Violation of Title VII
### (As to the Uncle Giuseppe's Defendants only)

119.    Plaintiff Candio repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

120.    By the actions described above, among others, Defendants have failed to provide Plaintiff with a reasonable accommodation for his religious beliefs, in violation of Title VII.

121.    As a direct and proximate result of Defendants' unlawful failure to accommodate, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
### Failure to Accommodate in Violation of the NYSHRL
### (As to all Defendants)

122.    Plaintiff Candio repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

123.    By the actions described above, among others, Defendants have failed to provide Plaintiff with a reasonable accommodation for his religious beliefs, in violation of Title VII.

124.    As a direct and proximate result of Defendants' unlawful failure to accommodate, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

**THIRD CAUSE OF ACTION**
**Discrimination in Violation of Title VII**
**(As to the Uncle Giuseppe's Defendants only)**

125.    Plaintiff Candio repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

126.    By the actions described above, among others, Defendants have discriminated against Plaintiff because of his religion, in violation of Title VII.

127.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

**FOURTH CAUSE OF ACTION**
**Discrimination in Violation of the NYSHRL**
**(As to all Defendants)**

128.    Plaintiff Candio repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

129.    By the actions described above, among others, Defendants have discriminated against Plaintiff on the basis of his religion, in violation of the NYSHRL.

130.     As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of Title VII**
**(As to the Uncle Giuseppe's Defendants only)**

131.     Plaintiff Candio repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

132.     By the actions described above, among others, Defendants have retaliated against Plaintiff after and because he engaged in protected activity, in violation of Title VII.

133.     As a direct and proximate result of Defendants' unlawful retaliatory conduct, Candio has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

**SIXTH CAUSE OF ACTION**
**Retaliation in Violation of the NYSHRL**
**(As to all Defendants)**

134.     Plaintiff Candio repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

135.     By the actions described above, among others, Defendants have retaliated against Candio after and because he engaged in protected activity, in violation of the NYSHRL.

136.     As a direct and proximate result of Defendants' unlawful retaliatory conduct, Candio has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against

Defendants for the following relief:

A. Declaring that the practices complained of herein are unlawful under applicable federal and state law;

B. Declaring that Defendants' violated Title VII and the NYSHRL by failing to accommodate Plaintiff's religious beliefs and awarding a recovery for damages sustained;

C. Declaring that Defendants' violated Title VII and the NYSHRL by discriminating against Plaintiff on the basis of his religion and awarding a recovery for damages sustained;

D. Declaring that Defendants' violated Title VII and the NYSHRL by retaliating against Plaintiff after and because he sought a religious accommodation and awarding a recovery for damages sustained;

E. Directing Defendants to place Plaintiff in the in the position he would have occupied but for Defendants' discriminatory and otherwise unlawful conduct and making Plaintiff whole for all earnings and other benefits he would have received but for Defendants' discriminatory and unlawful treatment, including, but not limited to, title, seniority status, wages and other lost benefits;

F. Awarding Plaintiff compensatory damages for monetary and/or economic losses, including but not limited to the loss of past and future income, wages, compensation, and other benefits of employment, incurred as of result of Defendants' violations of Title VII and the NYSHRL, in an amount to be determined at trial, plus prejudgment interest;

G. Awarding Plaintiff compensatory damages for non-monetary and/or non-economic harm, including but not limited to compensation for mental anguish, humiliation, embarrassment, reputational harm, stress and anxiety, emotional and psychological pain and suffering, emotional and psychological distress and the physical manifestations caused, incurred as a result of Defendants' violations of Title VII and the NYSHRL, in an amount to be determined at trial, plus prejudgment interest;

H. Awarding Plaintiff punitive damages for Defendants' violations of Title VII and the NYSHRL, in an amount to be determined at trial, plus pre-judgment interest;

I. Awarding Plaintiff prejudgment and post-judgement interest, retroactive to the date the damages accrued, under Title VII and the NYSHRL;

J. Awarding Plaintiff reasonable attorney's fees, costs, and disbursements of the action under Title VII and the NYSHRL;

K.  Awarding such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury.

Dated: July 12, 2024
      New York, New York

                                   Respectfully submitted,

                                   **Akin & Salaman PLLC**

                                   */s/ Justin Ames*
                                   _____
                                   Justin Ames

                                   45 Broadway, Suite 1420
                                   New York, NY 10006
                                   Telephone:  (212) 825-1400
                                   Facsimile:  (212) 825-1440
                                   justin@akinlaws.com
                                   *Counsel for Plaintiff*